**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL ACTION NO. 15-64-DLB**

**MARILYN GALE TRIMBLE**                                                                 **PLAINTIFF**


vs.                              **MEMORANDUM OPINION AND ORDER**


**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                    **DEFENDANT**

****************************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review

of an administrative decision of the Commissioner of Social Security.  The Court, having

reviewed the record, will affirm the Commissioner's decision, as it is supported by

substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 6, 2012, Plaintiff Marilyn Gale Trimble filed her application for

Disability Insurance Benefits ("DIB"), alleging disability as of August 31, 2012.  (Tr. 175-76).

Plaintiff's claim was denied initially and on reconsideration.  (Tr. 91-94 and 109-11).  On

March 26, 2013, Administrative Law Judge Michele M. Kelley conducted an administrative

hearing at Plaintiff's request.  (Tr. 28-76).  ALJ Kelley ruled that Plaintiff was not entitled to

benefits on April 4, 2014.  (Tr. 13-23).  This decision became the final decision of the

Commissioner when the Appeals Council denied review on June 22, 2015.  (Tr. 1-5).

1

On July 22, 2015, Plaintiff filed the instant action.  (Doc. # 1).  This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.  (Docs. # 11 and 12).

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *Id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

2

Cir. 1994).

## B.    *The ALJ's Determination*

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date.[1]  (Tr. 15).  At Step 2, the ALJ determined that Plaintiff has the following severe impairments: (1) cervical and dorsolumbar strain with degenerative disc disease; and (2) degenerative joint disease of the knees and shoulders.  (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17).  Specifically, the ALJ found that Plaintiff's musculoskeletal impairments do not meet or equal Listing 1.02(A) because "the examining and treating physicians' reports show the claimant does not have the ambulatory deficits required [by that Listing.]" (*Id.*).  The ALJ also concluded that Plaintiff's musculoskeletal impairments do not meet or equal Listing 1.04(A) because "the examining and treating physicians' reports show the neurological deficits required [ ] are not present."  (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform the following activities:

> lift, carry, push, and pull 20 pounds occasionally, 10 pounds frequently; stand and walk for six hours during an eight hour work day; sit for six hours during an eight hour workday; occasionally push and pull with the upper and lower extremities; occasionally climb ramps, stairs, ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead; and must avoid concentrated exposure to vibrations.

(Tr. 18).  The ALJ then found that Plaintiff is capable of performing past relevant work as

---

1) The ALJ also found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.  (Tr. 15).

a child support caseworker and supervising child support caseworker, both of which are classified as sedentary and skilled positions, because they do not require the performance of work-related activities precluded by her RFC. (Tr. 22). In reaching this conclusion, the ALJ relied on testimony from a vocational expert ("VE"), who opined that "a hypothetical individual with the claimant's residual functional capacity would be able to perform the physical and mental demands of the claimant's past work as a child support caseworker, supervising child support caseworker as actually and generally performed." (*Id.*). Because Plaintiff is capable of performing past relevant work, the ALJ concluded that she has not been under a disability, as defined in the Social Security Act, from August 31, 2012, through the date of her decision. (Tr. 23).

## C.   *Plaintiff's Arguments*

Plaintiff essentially advances four arguments on appeal. (Doc. # 15-2). First, Plaintiff argues that the ALJ was inconsistent in her treatment of Dr. Stephen Nutter's opinion. Second, Plaintiff contends that the ALJ erred in her treatment of Dr. Sudhideb Mukherjee's opinion. Third, Plaintiff insinuates that the ALJ erred in her RFC assessment. Fourth, Plaintiff insists that the ALJ relied on the VE's answer to an inaccurate hypothetical. The Court will address each of these arguments in turn.

### 1.   The ALJ was not inconsistent in her treatment of Dr. Stephen Nutter's opinion.

In social security disability cases, medical evidence may come from treating sources, non-treating sources and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and

who has, or has had, an ongoing treatment relationship with [claimant]."  *Id.*; *see also Abney v. Astrue*, Civ. A. No. 5:07-394-KKC, 2008 WL 2074011, at *11 (E.D. Ky. May 13, 2008) (stating that one meeting is insufficient to establish an ongoing treatment relationship).  A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case.  *Id.*

When deciding how much weight to give the opinion of a non-treating source, the ALJ must consider the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention.  20 C.F.R. § 404.1527(c)(1)-(6).

On November 7, 2012, Dr. Stephen Nutter performed a consultative examination on Plaintiff at the Commissioner's request.  (Tr. 360-64).  Dr. Nutter provided the following summary of his examination:

> The claimant is a 57-year-old female who complains of problems with her back and neck.  She had pain and decreased range of motion of the cervical and lumbar spine, with tenderness of the lower back.  She had kyphosis noted of the thoracic spine.  The straight leg raise test was negative.  Grip strength, fine manipulation skills, sensory and motor modalities were intact. There is no evidence of nerve root compression noted.
>
> The claimant complains of problems with joint pain.  She had crepitus in the knees and a little bit in the shoulders.  She had pain and tenderness in the left hip and both knees, with crepitus in the knees.  She had reduced range of motion of the knees and some bony enlargement of both knees.  She was unable to squat due to knee pain.  There is no evidence of rheumatoid arthritis.  On physical exam, there are no rheumatoid nodules, capsular thickening, periarticular swelling or tophi.  There is no ulnar deviation.

5

> The claimant's ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carry and traveling as well as pushing and pulling heavy objects is impaired due to back pain, neck pain and joint pain.

(Tr. 364).

After reviewing Dr. Nutter's report, the ALJ found that "Dr. Nutter's assessment is too vague to assist in determining a specific residual functional capacity." (Tr. 21). However, the ALJ gave "great weight" to Dr. Nutter's examination. (*Id.*). Plaintiff sees this as an inconsistent finding by the ALJ. (Doc. # 11 at 3). Specifically, she asks: "How does one give 'great weight' the examining physician and disregard the opinion . . . at the same time?" (*Id.*).

The Court does not believe that this is inherently inconsistent, as Plaintiff suggests. Rather, it seems that the ALJ divided Dr. Nutter's opinion into two parts–his assessment of Plaintiff's limitations and his medical examination. (Tr. 21). She then chose to give the former little weight and the latter great weight. (*Id.*). As the ALJ explained, Dr. Nutter's conclusory statement that Plaintiff is "impaired" in her ability to do certain work-related activities is of limited use in formulating Plaintiff's RFC. (*Id.*). For example, Dr. Nutter indicated that Plaintiff's ability to push and pull heavy objects is "impaired" due to her back, neck and joint pain. (Tr. 364). However, he does not describe the extent and severity of her limitations. Is she totally incapable of pushing and pulling heavy objects due to her back and neck pain? Or can she do perform such tasks on an occasional basis? For this reason, the Court finds no error in the ALJ's decision to discount this portion of Dr. Nutter's opinion.

## 2.    The ALJ did not err in her treatment of Dr. Mukherjee's opinion.

The 20 C.F.R. § 404.1527(d)(2) factors discussed above also guide the ALJ in determining how much  weight to accord a non-examining physician's opinion.  *Davenport v. Astrue*, No. 3:06-cv-402, 2008 WL 641131 at *6 (S.D. Ohio March 4, 2008).  Accordingly, the ALJ must consider the length of the treatment relationship and the frequency of the examination; the nature and extent of the treatment relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the treating source.  *Id.*; 20 C.F.R. § 404.1527(d)(2).

While opinions from non-treating sources typically receive more weight than opinions from non-examining sources, deviation from this general approach is not a *per se* error of law.  *Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 433 (6th Cir. 2012).  For example, an opinion from a state agency medical consultant may be entitled to greater weight than examining or treating source opinions.  *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *3 (July 2, 1996)).  This is particularly so when the consultant's opinion is based on a review of the complete case record that "provides more detailed and comprehensive information than what was available to the individual's treating source."  *Id.*

In this case, Dr. Sudhideb Mukherjee , a state agency physician, reviewed Plaintiff's medical records.  (Tr. 96-108).  He opined that:

> the claimant has the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally, 10 pounds frequently; stand and walk for six hours during an eight hour workday; sit for six hours during an eight hour workday; occasionally push and pull with the upper and lower extremities; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead; and must avoid concentrated exposure to vibrations.

7

(*Id.*).

The ALJ noted that "[t]he state agency medical consultant is a non-treating, non-examining medical source." (Tr. 21).  However, his "opinion is based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations." (*Id.*).  The ALJ also found that her opinion "is internally consistent and well supported by a reasonable explanation and the available evidence." (*Id.*).  Accordingly, she gave Dr. Mukherjee's opinion "great weight." (*Id.*).

Plaintiff complains that the ALJ erred in giving Dr. Mukherjee's opinion more weight than Dr. Nutter's opinion because Dr. Mukherjee did not examine her.  (Doc. # 11 at 3).  While Plaintiff is correct in stating that Dr. Mukherjee did not examine her, this does not necessarily mean that his opinion is entitled to less weight than Dr. Nutter's opinion.  *See Norris*, 461 F. App'x at 433.  This is particularly so when, as here, Dr. Mukherjee provided more detail about the nature and extent of Plaintiff's functional limitations.  *Id.*  Moreover, as the ALJ observed, Dr. Mukherjee's opinion was consistent with the record as a whole. (Tr. 21).

Nevertheless, Plaintiff claims that Dr. Mukherjee's opinion should have been discounted because he did not consider one of her MRIs.  (Doc. # 11 at 3-4).  However, Dr. Mukherjee could not have considered the MRI because it did not yet exist.  The record reflects that Dr. Mukherjee issued his assessment on January 31, 2013, while the MRI was not performed until December 11, 2013.  (Tr. 96-108 and 435-37).  However, Dr. Mukherjee did rely, in part, on an x-ray that showed degenerative disc disease at L4-5 and L5-S1.  (Tr. 104).  The MRI, summarized below, also showed evidence of degenerative disc disease in the lumbar spine:

      1.     Multilevel degenerative disc/degenerative joint disease, most severe at L4-5 where there is a Grade I degenerative anterolisthesis of L4 on L5 and mild spinal stenosis and mild bilateral [n]eural foraminal narrowing.

      2.     Right paracentral L5-S1 disc bulge with mild posterior displacement of the right S1 nerve root.

(Tr. 437). Thus, although Dr. Mukherjee did not have the benefit of the MRI, he did consider Plaintiff's degenerative disc disease in rendering his assessment. (Tr. 106). The Court finds no error in the ALJ's treatment of Dr. Mukherjee's opinion.

Even if Plaintiff is correct in asserting that the MRI provides more sophisticated detail about her condition than the x-ray, the ALJ was aware of the MRI results. (Tr. 19). Moreover, the record reflects that the ALJ considered all of the medical evidence, including the MRI, in rendering her RFC assessment. For this reason, the Court finds that the ALJ adequately accounted for this evidence, even though it was not put before Dr. Mukherjee for review.

### 3. The ALJ did not err in rendering her RFC assessment.

Residual functional capacity ("RFC") is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that she finds credible in the RFC

assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff does not explicitly attack the ALJ's RFC assessment; instead, she simply insinuates that it is flawed in some undefined aspect. Because Plaintiff adverts to this issue in a perfunctory manner, the Court could treat it as waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). However, the Court will briefly address the ALJ's RFC analysis because it is derived, in part, from the medical opinion evidence discussed above The record reflects that the ALJ reviewed all of the evidence in the record. (Tr. 13-21). She identified the available sources of evidence, explained how she weighed those sources and factored the limitations that she found to be credible into the RFC assessment. (*Id.*). For these reasons, the Court finds that the RFC assessment is supported by substantial evidence.

### 4.    The ALJ relied on the VE's answer to an appropriate hypothetical.

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779. (6th Cir. 1987). However, the ALJ need only incorporate those limitations he finds to be credible. *Casey*, 987 F.2d at 1235.

Plaintiff briefly suggests that the ALJ should have relied on the VE's answer to the hypothetical question posed by her attorney during the administrative hearing. (Doc. # 11 at 4). Specifically, her attorney asked the VE if any jobs would be available if Plaintiff had to be off task 15 percent of the workday. (Tr. 23). The VE answered that there would not be any jobs available. (*Id.*). Although the ALJ "considered the negative responses given by the vocational expert to the hypothetical questions posed by the claimant's

10

representative," she decided to "disregard[ ] these responses because the weight of the evidence does not support these limitations." (*Id.*). Instead, the ALJ relied on the VE's answer to her own hypothetical question. (*Id.*). The Court finds no error in this decision, as the ALJ's hypothetical question incorporated the limitations that she found to be credible and supported by the evidence.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3)   Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 10th day of April, 2016.



Signed By:

*David L. Bunning*   DB

United States District Judge

K:\DATA\SocialSecurity\MOOs\Pikeville\15-64 Trimble MOO.wpd

11